**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

SADIE WHITE, et al.,

                      Plaintiffs,

v.                                     CIVIL ACTION NO.  2:12-cv-00384

ALLY FINANCIAL INC., et al.,

                      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are West Asset Management, Inc.'s Motion for Summary Judgment [Docket 59] and Ally Financial Inc.'s Motion for Summary Judgment [Docket 61]. The plaintiff has filed a response to both motions, and the defendants have each filed replies. Both motions are ripe for review. For the reasons set forth below, both defendants' motions for summary judgment [Dockets 59 & 61] are **GRANTED**. Because the granting of both defendants' motions for summary judgment disposes of the case, all remaining motions in this case [Dockets 43, 73, 75] are **DENIED as moot**.

**I.**      **Background and Procedural History**

The factual background and procedural history of this case are well known to the parties and set forth in this court's January 15, 2013 Memorandum Opinion and Order. (*See* Mem. Op. & Order [Docket 46], at 2-4). The background as discussed therein is hereby adopted, and supplemented as deemed necessary in this Memorandum Opinion and Order. The defendants have both filed motions for summary judgment. The plaintiff's response noted that "[i]n the interest of narrowing issues for trial, Plaintiff will voluntarily dismiss her common law tort

claims." (Pl.'s Mem. in Opp'n to the Mots. for Summ. J. of Defs. Ally Fin. Inc. & W. Asset Mgmt., Inc. [Docket 71], at 19 n.5) [hereinafter Pl.'s Resp.]. Accordingly, only Counts One and Five of the Second Amended Complaint remain. Count One, brought individually and on behalf of a class, alleges a violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA") under § 46A-2-127(d). Count Five, brought individually, alleges violations of the WVCCPA under §§ 46A-2-128(e) and 46A-2-125(d). I will discuss the motions for summary judgment below.[1]

## II.    Motions for Summary Judgment

Three sections of the WVCCPA are at issue in this case: §§ 46A-2-127(d), 128(e), and 125(d). The defendants' motions will be discussed below in terms of these three sections.

### A.    *Legal Standard*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most

---

[1]    The plaintiff's motion for class certification is also pending before the court. As the Advisory Committee's Note to Federal Rule of Civil Procedure 23 makes clear, Rule 23(c)(1) "affords a district court discretion to rule on a summary judgment motion before ruling on a class certification motion." *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 756 (S.D. W. Va. 2011); *see* Fed. R. Civ. P. 23(c)(1) advisory committee's note (2003). Accordingly, this court has addressed motions for summary judgment prior to motions for class certification in circumstances where a decision on the merits necessarily affects the decision on class certification. *See Delebreau v. Bayview Loan Serv., LLC.*, 770 F. Supp. 2d 813, 818-19 (S.D. W. Va. 2011); *Rhodes*, 657 F. Supp. 2d at 756.

favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

## B. *Count One: Section 46A-2-127(d)*

The first section of the WVCCPA at issue is § 46A-2-127(d). This section states:

No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section . . .

(d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding.

W. Va. Code § 46A-2-127(d). West argues that in West Virginia, the probate process is not the exclusive process for the collection of a decedent debt, and that the plaintiff's basis for her § 127(d) claim is that West's attempts to collect a decedent's debt outside of the formal probate process is a violation of the statute. (*See* Mem. in Supp. of W. Asset Mgmt., Inc.'s Mot. for Summ. J. [Docket 60], at 5) [hereinafter West's Mem.]. In the plaintiff's response and at the summary judgment hearing, she clarified this claim. The plaintiff focused on her allegation under

§ 127(d) that West used "fraudulent, deceptive or misleading representation or means to collect or attempt to collect" the deficiency balance.

To support her argument, the plaintiff principally relies on two letters sent to her by West. These letters were addressed to "Jesse D. White."[2] (July 6, 2009 and September 7, 2009 Letters from West [Docket 43-2 & 43-3]). The introduction to the letter begins: "To the Estate of JESSE D WHITE." (*Id.*) The first letter states, in relevant part:

> Please accept our sincere condolences on the death of JESSE D WHITE. WEST ASSET MANAGEMENT, INC. has been retained to handle this account. The balance owed is $7,200.45. . . . If there is an estate, please forward the Notice of Administration form to our office for processing. (You may obtain this form from the probate court or attorney.)
>
> It's easy to resolve this account:
>
> 1.  Call us . . . to further discuss the bill or provide payment information over the phone . . .; or
> 2.  Log on the internet . . . or call toll free . . . to pay this account over the phone. Use a credit card, or a Visa/MasterCard backed debit card, or simply withdraw directly from your bank account; or
> 3.  Enclose check or money order for payment in the provided envelope and mail the payment to the address provided.

(July 6, 2009 Letter from West [Docket 43-2]).  The second letter states, in relevant part:

> WEST ASSET MANAGEMENT, INC. has been retained to handle this account. We are offering the state a: 75% Settlement Offer . . . Our account representatives have the authority to negotiate a settlement on our client's behalf to help the estate resolve this matter.

(September 7, 2009 Letter from West [Docket 43-3]). The second letter also contains the same language as the first regarding the methods available to resolve the account. The plaintiff focuses on the fact that West's letter indicated "us[ing] a credit card, or a . . . debit card, or . . . your bank account," (*see id.*), because according to the plaintiff, Jessie D. White is deceased and does not have a credit card or debit card, and the phrase "your bank account" suggests that the plaintiff

---

2       West misspelled the decedent's name, Jessie D. White, in its letters.

should pay this debt from her personal assets. West focuses on the fact that the letter was addressed to the decedent and the introduction line was addressed to the Estate. I note that additional language in the letters make it clear that the estate, not the individual reading the letter, is the obligor on the debt. For example, the first letter included the sentence: "If there is an estate, please forward the Notice of Administration form to our office for processing." (July 6, 2009 Letter from West [Docket 43-2]). The second letter included the phrases "[w]e are offering *the estate* a 75% Settlement Offer" and "[o]ur account representatives have the authority to . . . help *the estate* resolve this matter." (September 7, 2009 Letter from West [Docket 43-3]).

The plaintiff offers expert testimony from John Hussell and Thomas Tarter. In part, these experts testified to exactly what the plaintiff argued at the summary judgment hearing. For example, Mr. Hussell testified:

> Q. Do you see any reference in either one of the letters directing that letter to Sadie White?
>
> A. Sadie White's name does not appear on those letters, but it is apparent to me that it was addressed to Mrs. White because it cannot be addressed to Jessie White. Despite what the address says, Jessie White had passed away. The letter acknowledges the death of Jessie White and refers to a you. For example, "use your bank account." I mean, that's somebody other than Jessie White, so in this case, I know that it was Sadie.

(Hussell Dep. [Docket 71-4], at 26:1-26:11).[3] However, the plaintiff herself testified in a lengthy exchange regarding the phone calls she received:

> Q. Would they say who they were calling, looking for?
> A. Yes.
> Q. Who were they looking for?

---

[3] I note that West argues that the plaintiffs' experts offer legal conclusions. Given the record before the court, this appears to be true. Mr. Hussell specifically analyzed "the question of whether or not the debt collection practices of West Asset Management, Inc. are consistent with West Virginia probate law." (Letter from John F. Hussell, IV [Docket 78-1], at 3). Accordingly, he renders the opinion that "to a reasonable degree of certainty[,] the debt collection practices of West Asset Management, Inc. are not consistent with West Virginia probate law." (*Id.*). Mr. Hussell merely speculates in support of his opinion, which offers a legal conclusion and is not the proper subject of expert testimony.

| A. | Ever who was over Jessie White, which was me. |
|---|---|
| Q. | So, again, the representative of the estate of your deceased husband? |
| A. | Yes. |
| Q. | They never said they were looking for Sadie White? |
| A. | I'm the same. |
| Q. | But did the message say "We're calling for Sadie White"? |
| A. | It's the same, to me. That's the same. They were calling for Sadie White. |
| Q. | But did they ever use the words "We're calling" or "leaving a message for Sadie White"? Did they ever say that they were looking for Sadie White? |
| A. | They were looking for the administrator over the estate, Jessie White, which is me. |
| Q. | I understand that. |
| A. | So they might as well as said "I want to talk to Sadie White." |
| Q. | But they never said "We want to talk to Sadie White"? |
| A. | No. |

(White Dep. [Docket 59-1], at 82:12-83:12). The plaintiff further testified as to the letters that she received:

| Q. | Do you know, if you did get any letters, how they may have been addressed? |
|---|---|
| A. | The same. |
| Q. | To the Estate of Jessie White? |
| A. | Yes. |
| Q. | You never received any letters directly to yourself from West? |
| A. | No. |

(*Id.* at 83:16-83:23). It is clear from this testimony that the phone calls and letters were addressed to the administrator of the estate of the deceased, and that the plaintiff knew that West's phone calls and letters were seeking the administrator. To be sure, the plaintiff indicated some confusion as to whether West seeking her in her individual capacity or as administrator of the estate was the same. However, her confusion cannot be considered the result of "any fraudulent, deceptive or misleading misrepresentation or means to collect" the debt by West. W. Va. Code § 46A-2-127(d). Otherwise, a debt collector would put itself at risk of violating the statute any time it attempted to contact an administrator of an estate of a deceased.

I am mindful of the fact that the WVCCPA should be liberally construed, as the purpose of the statute is to protect consumers from unfair, illegal, and deceptive conduct. *See Barr v.*

6

*NCB Mgmt. Servs., Inc.*, 227 W. Va. 507, 513 (2011). In the instant matter, however, viewing the underlying facts and inferences in the light most favorable to the plaintiff, I **FIND** that she has not offered sufficient admissible "evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Accordingly, I **GRANT** West's motion for summary judgment on Count One.[4] Additionally, because it appears that the plaintiff was not proceeding on this claim against Ally, I also **GRANT** Ally's motion for summary judgment on Count One.[5]

## B.    *Count Five: Section 46A-2-128(e)*

The second section of the WVCCPA at issue is § 46A-2-128(e), which states:

---

[4]      In the briefs and at the hearing, the parties presented arguments related to the Federal Trade Commission ("FTC")'s policy statement regarding the collection of decedents' debts. The plaintiff pointed out that the FTC stated, in the context of the federal Fair Debt Collection Practices Act, that:

> To avoid creating [a misimpression that the individual is personally liable for the decedent's debts,] it may be necessary for the collector to disclose clearly and prominently that: (1) It is seeking payment from the assets in the decedent's estate; and (2) the individual could not be required to use the individual's assets or assets the individual owned jointly with the decedent to pay the decedent's debt.

Statement of Policy Regarding Communications in Connection With the collection of Decedents' Debts, 76 Fed. Reg. 44915, 44922 (July 27, 2011). The plaintiff then points out that after the FTC policy statement was issued, West changed its form letters.

      I note that this policy statement was issued two years after the letters in this case were mailed. Moreover, the statement only states that it *may* be necessary for the collector to make the two disclosures suggested by the FTC. In other words, the disclosures may be *sufficient* to avoid creating the misimpression that an individual is personally liable for a decedent's debts, but nothing in the statement suggests that it is *necessary*.

[5]      The plaintiff's arguments regarding § 46A-2-127(d) focused solely on West's actions. In fact, the plaintiff herself stated:

> [T]he central inquiry regarding Count One . . . is whether Plaintiff can offer concrete evidence that would allow a reasonable juror to find that *West* used fraudulent, deceptive or misleading representations or means to attempt to collect claims from the Plaintiff, or that *West* made false representations or implications of the character, extent or amount of its claim from the Plaintiff.

(Pl.'s Resp. [Docket 71], at 4) (emphasis added). The plaintiff's arguments that Ally is liable under a vicarious liability theory extends only to her claims under §§ 46A-2-128(e) and 125(d). (*See id.* at 17) ("Finally, Ally contends that it cannot be held liable for any violations *of §§ 128 and 125* . . . This defense fails . . .") (emphasis added).

No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

(e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

W. Va. Code § 46A-2-128(e). West argues that it did not receive any direct notice from the plaintiff that she was represented by an attorney, and that any notice the plaintiff provided to Ally regarding representation by an attorney is not imputed to West. (*See* West's Mem. [Docket 60], at 16) ("At the time that plaintiff gave notice that she was represented by counsel, the debt had not yet been placed with West for collection by Ally . . . The notice given to West's client, Ally, 8 months earlier, is not imputed to West."). Ally argues that although it had notice that the plaintiff was represented by an attorney in connection with her individual bankruptcy, it had no notice that the plaintiff was represented by an attorney with respect to the debt at issue. (*See* Ally Fin. Inc.'s Mem. in Supp. Mot. for Summ. J. [Docket 62], at 12-13) [hereinafter Ally's Mem.].

The plaintiff focuses on the particular language in the statute that it need only be shown that "*it appears* that the consumer is represented by an attorney." W. Va. Code § 46A-2-128(e) (emphasis added). According to the plaintiff, Ally's records show that it knew she was represented by counsel, and in particular, that the law firm was involved in the voluntary surrender of the vehicle. (Pl.'s Resp. [Docket 71], at 16). The plaintiff then argues, essentially, that West was on notice that the plaintiff was represented by an attorney because Ally's account records stated as such.

It bears noting that the WVCCPA—and particularly, the claim at issue—involves attempts from the defendants to collect on a debt owed. The language in § 46A-2-128(e) reflects

this by stating "[n]o debt collector shall use unfair or unconscionable means *to collect or attempt to collect any claim*." W. Va. Code § 46A-2-128(e) (emphasis added). The plaintiff's representation by an attorney for her personal bankruptcy has no bearing on whether she appears to be represented by an attorney with respect to the debt at issue. Even if Ally and West both knew that the plaintiff was represented by counsel for her personal bankruptcy, neither defendant would violate § 46A-2-128(e) by communicating with her if it did not appear that she was represented by an attorney with respect to the debt at issue.[6] Accordingly, I **GRANT** West and Ally's motions for summary judgment on the plaintiff's claim under § 46A-2-128(e).

### C.    *Count Five: Section 46A-2-125(d)*

The third section of the WVCCPA at issue is § 46A-2-125(d), which states:

> No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> (d) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number.

W. Va. Code § 46A-2-125(d). West argues that it made twenty-one calls over the course of six months to the plaintiff's residence "attempting to identify the estate representative." (West's Mem. [Docket 60], at 16-17). According to West, the plaintiff "has failed to offer any evidence that the frequency or persistence of the calls rise to the requisite level of annoyance, abuse, or oppression to state a claim under the WVCCPA." (*Id.* at 17). West further argues that the plaintiff "has not offered any evidence that West's calls were made <u>with an intent</u> to annoy,

---

[6]      I note that the instant matter presents a particularly odd underlying factual situation. Although the decedent was the sole obligor on the debt, as admitted by both parties, the plaintiff listed the vehicle as her personal assets during her personal bankruptcy, and voluntarily surrendered the vehicle to Ally as part of her personal bankruptcy. According to Ally, the bankruptcy attorney has admitted that it was a mistake to list the vehicle as the plaintiff's personal asset.

abuse, or oppress her." (*Id.* at 18) (emphasis in original). Ally argues that it made only ten calls to the decedent's phone number between the time of his death on September 3, 2008 and October 20, 2008, and the purpose of these calls were "to determine who was handling Mr. White's Estate upon discovering that he was deceased." (Ally's Mem. [Docket 62], at 15). Once the plaintiff provided additional details to Ally on October 20, 2008, it made no further phone calls to the plaintiff regarding the debt.

The plaintiff focuses on the first part of the statute, which states that "[n]o debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another." W. Va. Code § 46A-2-125(d). In doing so, the plaintiff argues that subsection (d) is one way to prove a violation of § 46A-2-125, but not the only way. The plaintiff then argues that her claim is supported "through evidence that Defendants intended to persuade Mrs. White to pay her late husband's debt from her own funds, *and* because Defendants knew Mrs. White was represented by counsel." (Pl.'s Resp. [Docket 71], at 15). The plaintiff asserts that "[w]hether this constitutes unreasonable oppression or abuse is a fact question appropriate for a jury's consideration." (*Id.*).

I note first that the facts the plaintiff relies on for her § 46A-2-125 claim are the same ones that she relies on for her §§ 46A-2-127(d) and 46A-2-128(e) claims. That is, the plaintiff has offered evidence that West intended to persuade her to pay the decedent's debt from her own funds to support her claim that West acted fraudulently, deceptively or misleadingly. The plaintiff has also offered evidence that the defendants knew that she was represented by counsel to support her claim that the defendants communicated with her even when it appeared that she was represented by an attorney. I have already ruled above that the defendants are entitled to summary judgment under the plaintiff's §§ 46A-2-127(d) and 46A-2-128(e) claims, and the

10

plaintiff has offered no additional evidence of oppression or abuse. Accordingly, I **GRANT** West and Ally's motions for summary judgment on the plaintiff's claim under § 46A-2-125(d).[7]

III.     **Conclusion**

As discussed above, defendants West and Ally's motions for summary judgment [Dockets 59 & 61] are **GRANTED**. Because the granting of both defendants' motions for summary judgment disposes of the case, all remaining motions in this case [Dockets 43, 73, 75] are **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       May 2, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[7]     Accordingly, I do not reach the issue of whether Ally is liable for any of West's actions in this case under a theory of vicarious liability.